**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TGH2 LLC,**

**Plaintiff,** **Case No.: 6-26-cv-000422-ACC-DCI**

**v.**

**SOUTHERN TRUCK LEASING LLC,**
**AKL TRANSPORT LLC,**
**and KRIS LUNSFORD,**

**Defendants.**
______________________________/

# SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff, TGH2 LLC ("Plaintiff" or "TGH2"), sues Defendants, SOUTHERN TRUCK LEASING LLC, ("STL"), AKL TRANSPORT LLC, ("AKL"), and KRIS LUNSFORD, ("Lunsford"), (collectively, "Defendants"), and files its Second Amended Complaint and alleges:

## INTRODUCTION

1. This is an action arising from a fraudulent investment scheme orchestrated by Defendants to induce TGH2 into an investment contract compelling TGH2 to invest millions of dollars into a purported venture of purchasing commercial trucks–owned and maintained by Defendants–for passive returns.

2. Defendants absorbed TGH2's investment funds of millions of dollars and after several months of passive returns, ceased its promised obligation to TGH2.

3. TGH2 would soon realize Defendants' reputation and pattern of this fraudulent scheme scamming several investors of their hard-earned monies and disguising said investment contract as a lucrative investment while concealing the true nature of the con-artist's scheme.

4. As a direct result of Defendants' egregious misconduct, TGH2 has suffered, and continues to suffer, direct and consequential harm, and asserts causes of action of Federal Securities Fraud under 15 United States Code Section 78j and Florida Securities Fraud under Florida Statute Sections 517.301 and 517.211.

## PARTIES, JURISDICTION, AND VENUE

5. This action includes claims for legal relief and this Court has subject matter jurisdiction pursuant to 28 United States Code Section 1332 as damages exceed $75,000.00 and Defendants have complete diversity from Plaintiff.

6. Plaintiff, TGH2, LLC, has been a Florida limited liability company with its principal place of business in Orange County, Florida.

7. Defendant, Southern Truck Leasing LLC, has been a Georgia limited liability company with its principal place of business in Fulton County, Georgia.

8. Defendant, AKL Transport, LLC, has been a Georgia limited liability company with its principal place of business in Gwinnett County, Georgia.

9. Defendant, Kris Lunsford, resides in Gwinnet County, Georgia.

10. This Court has personal jurisdiction over Defendants under Florida Statute Section 48.193 because Defendants conducted business in Florida,

committed tortious acts in Florida, caused injury to persons in Florida by act or omissions outside Florida while the Defendants were engaged in solicitation or service activities in Florida, breached contracts in Florida by failing to perform acts required by the contract, and engaged in substantial and not isolated activity in Florida.

11. Venue is proper in this District under 28 United States Code Sections 1331 and 1339, because the cause of action arises under federal law, 15 United States Code Section 78j. In addition, venue is proper in this District under Florida Statute Section 47.011 because substantial part of the events or omissions giving rise to the claims occurred in Orange County, Florida, and the subject ventures giving rise to TGH2's claims took place in Orange County, Florida.

## GENERAL ALLEGATIONS

12. Initially, Daniel Hicks ("Hicks"), owner of TBMAX INC. ("TBMAX"), brought the investment opportunity to Tony Hartsgrove's ("Hartsgrove") attention. Hartsgrove and Hicks had an established history of sharing and recommending business ventures and partnerships.

13. In or around 2023, TBMAX informed Hartsgrove about an investment contract with Defendants wherein TBMAX purchased and leased commercial trucks owned by STL and maintained by AKL. Lunsford authorized the investment contract in his ownership and agency capacity under STL and AKL.

14. To be clear, Lunsford owns, operates and manages STL and AKL for the operations of his commercial truck business and of course, to facilitate his investments ploy.

15. At the time the investment was presented, neither Hicks nor Hartgrove had knowledge of Defendants' prior fraudulent conduct involving misrepresentations to investors. Hicks represented that the investment model had generated substantial returns, which, combined with Hartsgrove and Hicks' prior business relationship, provided a reasonable basis for Hartsgrove's reliance.

16. Soon thereafter, Defendants represented that their business investment model yielded high profits due to their ability to buy used commercial trucks in bulk, at a discounted rate, and that purchase and deployment of the commercial trucks for delivery of commercial goods generated lucrative profit.

17. Defendants instructed Hartsgrove to form a limited liability company to facilitate participation in the investment. TGH2, LLC (hereinafter, "Plaintiff") was thereafter formed and acted as a passive investor. Under Defendants' representations, Plaintiff acted as a passive investor, providing capital for the acquisition leasing of commercial trucks, while Defendants would retain exclusive control over operations, maintenance and placement of the commercial trucks including marketing the commercial trucks to third-party users. Defendants further represented that a portion of the revenue generated from such use would be remitted to Plaintiff.

18. Defendants represented that Plaintiff's initial investment would be returned within approximately four (4) months and that, thereafter, Plaintiff would receive profits in excess of the principal invested.

19. These representations were material and were made for the purpose of inducing Plaintiff to enter into the investment arrangement and commit substantial capital.

20. On or about August 2, 2024, Plaintiff and Defendants entered into an oral investment contract, evidenced by multiple wire transfers, at least eight (8) lease agreements, at least eight (8) maintenance agreements, and at least eight (8) transportation agreements, for commercial trucks (collectively, the "Agreement"). A true and accurate copy of the Agreement is attached hereto as **Composite Exhibit "A."**

21. The material terms of the Agreement, as represented by Defendants, included:

a. Plaintiff would invest approximately $22,500.00 to $25,000.00 per commercial truck;
b. Plaintiff would remit $700.00 weekly per truck commercial truck;
c. STL, under Lunsford's control, would own and operate the commercial trucks;
d. AKL, under Lunsford's control, would maintain the commercial trucks;
e. Defendants would remit $1,400 weekly per commercial truck to Plaintiff, derived from third-party usage;
f. Plaintiff's principal investment would be returned within approximately nineteen (19) weeks; and
g. Thereafter, Plaintiff would receive ongoing profits.

22. In reasonable reliance on Defendants' representations, Plaintiff invested in the purchase and leasing of approximately 286 commercial trucks, totaling $6,437,500.00 dollars.

23. Although only eight (8) agreements (lease, maintenance and transportation) were reduced to writing, *see* **Composite Exhibit "A,"** all investments were made pursuant to uniform representations by Defendants and operated as part of a single, integrated course of dealing.

24. Defendants performed in-part under the Agreement by issuing payments to Plaintiff, either directly or through Hicks, thereby reinforcing the appearance of legitimacy.

25. Between September 5, 2024, and December 17, 2024, Plaintiff received payment totaling approximately $1,358,700.00 dollars.

26. Following these initial payments, Defendants encouraged Plaintiff to increase its investment by representing that additional trucks would proportionally increase returns, thereby inducing further capital contributions.

27. Beginning in or around January 2025, payments to Plaintiff became irregular, diminished, and delayed. Lunsford provided repeated explanations involving alleged banking issues and transfer delays.

28. Upon information and belief, these representations were false and were made to conceal Defendants' inability or unwillingness to perform under the Agreement.

29. In fact, Defendants knew they did not have the financial capacity to sustain the payment structure they represented in their business model at the time the Agreement was formed.

30. Defendants thereafter failed and refused to return Plaintiff's invested funds. Plaintiff's inquiries revealed that similar payment issues had arisen with respect to other investors, including Hicks.

31. Together, Plaintiff and Hicks subsequently discovered that Defendants have engaged in a pattern of conduct involving similar representations to other investors, demonstrating a reputation and pattern of scamming multiple investors of millions of dollars.

32. Despite demands for payment, Defendants failed to provide adequate responses and did not return Plaintiff's investment funds.

33. Defendants knew of Plaintiff's well-off status from its reputable and successful career and created a master plan to misappropriate Plaintiff of their investment funds by structuring the investment opportunity to induce substantial capital contributions. Defendants further knew the TBMAX's investment contract would entice Plaintiff to partner with Defendants into an investment contract for millions.

34. Rather than utilize the investment funds in accordance with the Agreement, Plaintiff has knowledge that Defendants diverted Plaintiff's investment

funds for other purposes. For example, Defendants paid outstanding debt to the other investors in a similar investment contract scheme.

35. In a fraudulent cycle, Plaintiff learned that Defendants used investment funds from other investors disguised as Plaintiff's returned investment funds to create the appearance of legitimate returns. However, Defendants intended to commit fraud by snagging millions of investment funds.

36. Defendants orchestrated this investment intentionally to trick Plaintiff into a fraudulent investment. Defendants' conduct constituted a coordinated scheme to induce Plaintiff to invest substantial sums based on materially false representations.

37. At all relevant times, Defendants knowingly misrepresented their ability to manage, operate, and maintain commercial trucks in accordance with the Agreement.

38. Defendants' representations were false when made and remained false throughout the course of the Parties' dealings.

39. Defendants did not intend to perform their obligations as represented, under the Agreement.

40. At all times relevant hereto, AKL, STL, and Lunsford acted in concert with one another as Lunsford created AKL and STL as sham entities, to perpetuate their fraudulent scheme.

41. As a result, Plaintiff suffered damages exceeding $3,500,000.00, including lost payments, attorney's fees, and consequential damages.

42. Plaintiff has retained the law firm of Byrd Campbell, P.A., agreeing to pay a reasonable attorneys' fee for their services.

**COUNT I**
**FRAUD - SECURITIES EXCHANGE ACT OF 1934 § 10(b), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5**
**(Against all Defendants)**

43. Plaintiff sues Lunsford, STL, and AKL for legal relief.

44. Plaintiff realleges and incorporates all allegations stated in paragraphs 1 through 42.

45. This Count is asserted against all Defendants and is based on Section 10(b) if the Exchange Act, 15 U.S.C. Section 78j(b), and Rule 10b-5 promulgated by the Securities and Exchange Commission.

46. Defendants directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or the mail, engaged and participated in the making of materially false and misleading statements about the investment contract (i.e., the Agreement). The false and misleading information included the outright and absolute denial by Defendants of the investment contract in the acquisition and leasing of commercial trucks. Defendants' conduct constituted a device, scheme, and artifice to defraud the market for the securities in Plaintiff's companies and other companies.

47. The investment contract by Plaintiff and Defendants constitutes a security within the meaning of the Securities Exchange Act.

48. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth in this Complaint or acted with reckless disregard of the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Defendants had motive and opportunity to engage in the acts alleged in this Complaint. Indeed, the misrepresentations and/or omissions alleged in this complaint were done knowingly or recklessly and for the purpose and effect of committing a fraudulent scheme to retain millions of dollars in investments.

49. Kris Lunsford, in his individual capacity and by virtue of his position as the owner and founder of STL and AKL, acted in scienter because Defendants had knowledge, was intimately involved in and informed of STL's and AKL's, serious and ongoing discussions with Plaintiff. Notwithstanding, Defendants intentionally failed to disclose the inability and unwillingness to fulfill the investment contract, acquisition and leasing of the commercial trucks.

50. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, Plaintiff suffered an investment loss of $3,500,000.00 in damages during the time of the investment contract period. Plaintiff relied, to their detriment, on the integrity of the market of Defendants' commercial trucks business and the completeness and

accuracy of the information disseminated by the Defendants to Plaintiff in connection with the investment contract and operations and maintenance of commercial trucks.

51. At the time of the misrepresentation and omissions, Plaintiff was ignorant of their falsity and believed in the integrity of the market for its investment contract, acquisition and leasing of commercial trucks. Plaintiff could not in the exercise of reasonable diligence have known the actual facts.

52. By virtue of the above, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated under the Act.

53. Plaintiff has been damaged by Defendants' violations as described in this Complaint and seek recovery for the damages caused by such violations.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,500,000.00, treble damages, compensatory damages, pre-judgement, statutory damages, post-judgement interest, costs of suit, plus costs and fees, including attorney's fees, and any other relief this Court deems just and proper.

**COUNT II**
**FLORIDA SECURITIES FRAUD**
**(Against all Defendants)**

54. Plaintiff sues Lunsford, STL, and AKL for legal relief.

55. Plaintiff realleges and incorporates all allegations stated in paragraphs 1 through 42.

56. Defendants, acting in concert with one another, offered the investment contract (i.e., the Agreement) to Plaintiff within the meaning of Chapter 517, Florida Statutes.

57. The ventures, involving the investment of, acquisition and leasing of commercial trucks, constitute an investment contract under Florida Statute Section 517.021(33)(q), because Plaintiff invested funds into a common enterprise with an expectation of profits to be derived from the efforts of Defendants and their illusory business model.

58. Defendants failed to register the securities prior to selling or offering to sell the ventures to Plaintiff, in violation of Florida Statute Section 517.07.

59. In connection with the offer and sale of the commercial truck, Defendants:

i. Employed an investment of commercial trucks as a scheme to defraud and obtain funds from Plaintiff by means of untrue statements of material fact;
ii. Stated or omitted a material fact with the intent of misleading Plaintiff; and
iii. Engaged in a transaction, practice, and course of business which operates or would operate as a fraud or deceit upon a person, in violation of Florida Statute Section 517.301(1)(a).

60. Plaintiff materially and reasonably relied on Defendants' misrepresentations and omissions, investing millions of dollars into the commercial truck pursuant to the representations before and during the Agreement, and as a direct result, Plaintiff suffered an economic loss of approximately $3,500,000.00.

61. Plaintiff is entitled to all available remedies under Florida Statute Section 517.211, including but not limited to recovery of statutory damages, interest, costs, and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,500,000.00, treble damages, compensatory damages, statutory damages, pre-judgement, post-judgement interest, costs of suit, plus costs and fees, including attorney's fees, and any other relief this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
## (Against all Defendants)

62. Plaintiff sues Lunsford, STL, and AKL for legal relief.

63. Plaintiff realleges and incorporates all allegations stated in paragraphs 1 through 42.

64. On or about August 2, 2024, Plaintiff and Defendants entered into the Agreement wherein the Parties agreed:

i. Plaintiff would invest approximately $22,500.00 to $25,000.00 per commercial truck;
ii. Plaintiff would remit $700.00 weekly per truck commercial truck;
iii. STL, under Lunsford's control, would own and operate the commercial trucks;
iv. AKL, under Lunsford's control, would maintain the commercial trucks;
v. Defendants would remit $1,400 weekly per commercial truck to Plaintiff, derived from third-party usage;
vi. Plaintiff's principal investment would be returned within approximately nineteen (19) weeks; and
vii. Thereafter, Plaintiff would receive ongoing profits.

65. Plaintiff complied with the material terms of the Agreement including approximately $6,000,000.00 of invested funds.

66. However, Defendants' actions led to material breaches in several ways, including without limitation:

i. Misappropriating Plaintiff's invested funds by diverting said funds to unknown investors unrelated to the terms of the Agreement;
ii. Lack of acquisition or ownership of commercial trucks as relied on by Defendants' material representations and the Agreement;
iii. Failing to make obligated payments to Plaintiff; and
iv. Failing to sustain operations and maintenance of the commercial trucks.

67. Defendants have benefitted from Plaintiff's reliance on the Agreement and received millions of dollars without fulfilling their end of the Agreement.

68. Defendants committed material breaches of the Agreement as referenced in paragraph 66(i)–(iv), without limitation.

69. As a direct and proximate result of the Defendants' breaches of the Agreement, Plaintiff has suffered and continues to suffer direct and consequential damages including, without limitation, an economic loss of $3,500,000.00 dollars.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,500,000.00, treble damages, compensatory damages, statutory damages, pre-judgement, post-judgement interest, costs of suit, plus costs and fees, including attorney's fees, and any other relief this Court deems just and proper.

**COUNT IV**
**BREACH OF FIDUCIARY DUTIES**
**(Against all Defendants)**

70. Plaintiff sues Lunsford, STL, and AKL for legal relief.

71. Plaintiff realleges and incorporates all allegations stated in paragraphs 1 through 42.

72. Plaintiff's and Defendants' business relationship existed for over a year in which Plaintiff–at the direction of Defendant Kris Lunsford–formed TGH2, LLC for the investment contract, i.e., the Agreement.

73. Plaintiff is the owner and sole member of TGH2, LLC, for purposes of the Agreement.

74. Defendant Kris Lunsford presently owns, operates and manages, Defendants, Southern Truck Leasing, LLC and AKL Transport, LLC, and acted as an authorized agent at the time of the Agreement.

75. When forming TGH2, LLC, Plaintiff relied on Defendant Kris Lunsford's material representations, expertise, financial capacity and business model through Defendants, Southern Truck Leasing, LLC and AKL Transport, LLC.

76. In reliance on their material representations, Plaintiff placed its trust in Defendants to protect its financial and property interests, and Defendants accepted that trust.

77. Plaintiff further reposed its trust in Defendants to invest the funds for the purposes of the investment contract or the Agreement to acquire and lease commercial trucks for the mutual benefit of the Parties.

78. Defendants induced Plaintiff to the investment scheme in which Plaintiff provided approximately $6,000,000.00 dollars in said funds.

79. However, Defendants breached their fiduciary duties by failing to act in good faith and failing to maintain fair, honest and loyal, practices in their part of the investment.

80. Specifically, Defendants breached their fiduciary duties as stated in-part under paragraph 66 and as follows:

i. Misappropriating Plaintiff's invested funds by diverting said funds to unknown investors unrelated to the terms of the Agreement;
ii. Lack of acquisition or ownership of commercial trucks as relied upon by Defendants' material representations and the Agreement; and
iii. Failing to sustain operations and maintenance of the commercial trucks.

81. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiff has suffered and continues to suffer direct and consequential damages including without limitation, an economic loss of $3,500,000.00 dollars.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount of $3,500,000.00, treble damages, compensatory damages, statutory damages, pre-judgement, post-judgement interest, costs of suit, plus costs and fees, including attorney's fees, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 29, 2026

*s/ Lina M. Lopez*
**Tucker H. Byrd**
Florida Bar No. 381632
**Lina M. Lopez**
Florida Bar No. 610542
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: LLopez@ByrdCampbell.com
Secondary Email: MJuma@ByrdCampbell.com
Tertiary Email: paralegal@ByrdCampbell.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2026, a copy of the foregoing has been furnished via electronic mail to all counsel of record.

*/s/Lina M. Lopez*
**Lina M. Lopez, Esq.**